IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs April 18, 2018

## NATHAN CHALEUNSAK v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Davidson County**
**No. 2014-C-2449    Steve Dozier, Judge**

_____

### No. M2017-01186-CCA-R3-PC

_____

The Petitioner, Nathan Chaleunsak, appeals the denial of post-conviction relief from his 2015 guilty-pleaded conviction of second degree murder, for which he received an agreed, out-of-range sentence of thirty years to be served at 100%. The Petitioner sought post-conviction relief, asserting that he received ineffective assistance of counsel and that his guilty plea was not voluntarily and knowingly entered. Following a hearing, the post-conviction court denied relief. After review of the record and applicable law, we affirm the denial of post-conviction relief.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and CAMILLE R. MCMULLEN, JJ., joined.

Ryan Caldwell, Nashville, Tennessee, for the appellant, Nathan Chaleunsak.

Herbert H. Slatery III, Attorney General and Reporter; Sophia S. Lee, Senior Counsel; Glenn R. Funk, District Attorney General; and Pamela Anderson, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### FACTUAL AND PROCEDURAL HISTORY

The Petitioner and a co-defendant forced their way in to the residence of the victim, Mr. Eric Torres, and robbed him at gunpoint. Mr. Torres later identified the Petitioner in a photographic lineup. After leaving Mr. Torres' residence, the Petitioner and the co-defendant went next door to Amkha Vetvong's residence. The Petitioner and

the co-defendant attempted to force open the front door, but noticed that someone was behind the door on the inside of the residence. The Petitioner shot through the door, striking and fatally wounding Mr. Vetvong. The Petitioner and co-defendant then forced their way into the Mr. Vetvong's home in search of items to take.

Based upon these actions, the Petitioner was indicted by a Davidson County grand jury for two counts of first degree murder and one count each of aggravated burglary, possession of a weapon during the commission of a dangerous felony, and aggravated robbery. Thereafter, the Petitioner pleaded guilty to second degree murder and received a thirty-year sentence to be served at 100% as a multiple offender. The plea called for an out-of-range sentence pursuant to *Hicks v. State*, 945 S.W.2d 706 (Tenn. 1997).

During the plea hearing, the trial court thoroughly covered the rights the Petitioner would be waiving by pleading guilty, as well as the nature of the crime and potential sentences involved. The Petitioner expressed his intention to enter a guilty plea to an amended charge to one count of second degree murder, with a thirty-year sentence at 100%. After being advised by the trial court that the Petitioner may have only received a sentence of fifteen to twenty-five years if he was found guilty of second degree murder, the Petitioner agreed to accept the thirty-year sentence and further waive any issue about range of punishment in exchange for the State agreeing not to pursure a charge of first degree murder. The plea was accepted, and a judgment of conviction was entered against the Petitioner.

## Post-Conviction Proceedings

The Petitioner filed a pro se petition for post-conviction relief, alleging that his plea was not entered knowingly and voluntarily because he received ineffective assistance of counsel. At the evidentiary hearing, the twenty-one-year-old Petitioner testified that trial counsel met with him three or four times prior to entry of his plea but that he "really didn't understand" his sentence. One month prior to the Petitioner's trial, trial counsel presented him with the thirty-year plea offer. The Petitioner initially asked trial counsel if he could get a lower offer, but trial counsel assured him that it would not be possible and that it would be in his "best interest" to accept the thirty years. The Petitioner stated that trial counsel told him he would be serving thirty years at 85% and that he was unaware that his plea required 100% service. The Petitioner denied that trial counsel explained a *Hicks* plea to him and explained that he had responded in the affirmative to all of the trial court's questions at the direction of trial counsel.

The Petitioner testified that, at the age of fourteen, he was diagnosed with post-traumatic stress disorder ("PTSD") and that, although medication had been recommended

for his condition, his mother failed to have his prescriptions filled. The Petitioner admitted that he never told trial counsel about his condition.

On cross-examination, the Petitioner admitted that he learned prior to entering his plea that Mr. Hargus had confessed and implicated the Petitioner as the shooter; that Mr. Torres had identified the Petitioner through a photographic lineup and was prepared to testify that the Petitioner had robbed him at gunpoint; and that Ms. Vongsavath was planning to testify she had driven the Petitioner to Atlanta following the commission of the underlying crimes. The Petitioner also was aware that several witnesses had given statements to law enforcement officers stating that the Petitioner had admitted to shooting Mr. Vetvong.

With respect to his potential sentencing exposure, the Petitioner conceded that he was aware that a first degree murder conviction carried an automatic life sentence and that such a sentence was effectively sixty years in length. He acknowledged his awareness that an aggravated burglary conviction would have resulted in a sentence of eight to twelve years at eighty-five percent service and that the firearms conviction would have resulted in a sentence of five years at 100% service and would have required consecutive service. He agreed that his "exposure at trial was much greater than" the thirty-year sentence he received.

The Petitioner conceded that he understood the trial judge at the guilty plea submission hearing and that he had read and signed the plea agreement. The Petitioner testified that he really wished to receive a reduced sentence of no more than twenty-five years, but when the State and the post-conviction court explained that he would be facing a first degree murder trial if he was successful on his petition for post-conviction relief, the Petitioner stated that he would "like to keep" his thirty-year sentence.

Trial counsel testified that her practice consisted of ninety to ninety-five percent criminal defense and that she had tried close to twenty cases involving Class A or B felonies or homicides. Trial counsel retained the services of an investigator in the Petitioner's case, and counsel reviewed the discovery materials, including the witnesses who would be testifying at trial, with the Petitioner.

After the case was set for trial, the Petitioner informed trial counsel that he wished to settle the case and avoid going to trial. Trial counsel stated that the Petitioner suggested the plea offer of thirty years; that trial counsel discussed the implications of *Hicks*, the sentencing guidelines, and the Petitioner's plea agreement; and that trial counsel and the Petitioner agreed to make the thirty-year plea agreement offer to the State.

Trial counsel was confident that the Petitioner understood everything she had told him, and nothing indicated to her that a mental health defense would have been successful in the Petitioner's case, stating that the Petitioner had never mentioned anything to her about suffering from any mental health condition. Trial counsel confirmed that it was her belief that the Petitioner had knowingly and voluntarily entered into his plea agreement, and she denied ever instructing the Petitioner to lie under oath at the plea submission hearing.

Following the hearing, the post-conviction court denied the petition for relief. The post-conviction court specifically accredited trial counsel's testimony, concluding that the Petitioner had failed to show by clear and convincing evidence that trial counsel's performance was deficient or prejudicial. The court also determined that the guilty plea was entered knowingly and voluntarily.

## ANALYSIS

On appeal, the Petitioner contends that his guilty plea was not knowingly and voluntarily entered because he was denied effective assistance of counsel. To be granted post-conviction relief, a petitioner must establish that his conviction or sentence is void or voidable due to the abridgment of any constitutional right. T.C.A. § 40-30-103. The petitioner has the burden of proving the allegations of fact by clear and convincing evidence. *Id.* § 40-30-110(f); *Grindstaff v. State*, 297 S.W.3d 208, 216 (Tenn. 2009). "'Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" *Grindstaff*, 297 S.W.3d at 216 (quoting *Hicks v. State*, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998)). Factual findings by the post-conviction court are conclusive on appeal unless the evidence preponderates against them. *Ward v. State*, 315 S.W.3d 461, 465 (Tenn. 2010). This court may not substitute its inferences for those drawn by the trial judge, and "questions concerning the credibility of witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the trial judge." *Henley v. State*, 960 S.W.2d 572, 579 (Tenn. 1997).

Once a guilty plea has been entered, effectiveness of counsel is relevant only to the extent that it affects the voluntariness of the plea. *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (citing *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)). To succeed in a challenge for ineffective assistance of counsel, the petitioner must demonstrate that counsel's representation fell below the range of competence demanded of attorneys in criminal cases. *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). To prevail on a claim for ineffective assistance, a petitioner must prove "that counsel's performance was deficient and that the deficiency prejudiced the defense." *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). To

establish prejudice in the context of a guilty plea, a petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59; *see also Walton v. State*, 966 S.W.2d 54, 55 (Tenn. Crim. App. 1997). On review, counsel's performance is not to be measured by "20-20 hindsight." *Felts v. State*, 354 S.W.3d 266, 277 (Tenn. 2011). Instead, there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* (citing *State v. Burns*, 6 S.W.3d 453, 462 (Tenn. 1999)). A claim of ineffective assistance of counsel is a mixed question of law and fact that is reviewed de novo with no presumption of correctness. *Pylant v. State*, 263 S.W.3d 854, 867-68 (Tenn. 2008).

The United States Supreme Court has held that the Due Process Clause of the United States Constitution requires a guilty plea to be entered knowingly, voluntarily, and intelligently. *Boykin v. Alabama*, 395 U.S. 238, 242-44 (1969). The standard for evaluating whether a plea was entered into knowingly and voluntarily is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Alford*, 400 U.S. at 31 (citations omitted). To determine whether a guilty plea was voluntary and intelligent, the court must look to the totality of the circumstances. *State v. Turner*, 919 S.W.2d 346, 353 (Tenn. Crim. App. 1995); *see Chamberlain v. State*, 815 S.W.2d 534, 542 (Tenn. Crim. App. 1990). In making this determination, the court looks to various circumstantial factors, such as:

> the relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial.

*Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993) (citation omitted). A plea resulting from ignorance, misunderstanding, coercion, inducements, or threats is not "voluntary." *Id.* The validity of a guilty plea is a mixed question of law and fact that is reviewed de novo. *Lane v. State*, 316 S.W.3d 555, 562 (Tenn. 2010).

With respect to the Petitioner's claim of ineffective assistance of counsel, he contends only that trial counsel "erroneously told him that he would be receiving a guaranteed 85 percent release percentage on his sentence" and that had he "received more accurate advice from counsel, he would have not entered his guilty plea and would have proceeded to trial." Trial counsel's testimony stands in direct opposition to that of the

Petitioner's. She testified that she and the Petitioner "spoke at length" about the meaning of a *Hicks* plea and the sentencing guidelines and that both she and the trial court reviewed the plea agreement with the Petitioner, leading her to feel "very confident" that the Petitioner understood everything. The post-conviction court explicitly accredited the testimony of trial counsel. As has been noted on multiple occasions, it is not the province of this court to reweigh or reevaluate such determinations made by the trier of fact. *See Henley*, 960 S.W.2d at 578-79.

Nothing in the record before us preponderates against the post-conviction court's findings. During the plea colloquy, the court thoroughly informed the Petitioner of the charged offenses and specified that he was pleading out of his range. The Petitioner acknowledged that he understood the trial judge during the plea submission hearing and that he had read and signed the plea agreement. The plea agreement itself denotes that the sentence was out of range. Furthermore, the Petitioner testified at the post-conviction hearing that he would rather keep his thirty-year sentence than risk a trial for first degree murder. Nothing supports a finding of deficiency or prejudice.

With respect to the voluntariness of his guilty plea, the Petitioner contends that his plea was not entered knowingly and voluntarily based on ineffective assistance of counsel. Having determined that he did not receive ineffective assistance of counsel, his argument must fail. The record establishes that both trial counsel and the trial court informed the Petitioner of the terms and consequences contained within the plea agreement. Following the court's detailed colloquy, the Petitioner stated under oath that he understood and wanted to plead guilty.

A defendant's plea of guilty constitutes an admission in open court that the defendant committed the acts charged in the indictment. *Brady v. United States*, 397 U.S. 742, 748 (1970). The plea, however, is more than an admission; it is the defendant's consent that judgment of conviction may be entered without a trial. *Id.* A defendant's sworn responses to the litany of questions posed by the trial judge at the plea submission hearing represent more than hollow words. Indeed, the defendant's sworn statements and admissions of guilt stand as witness against the defendant at the post-conviction hearing when the defendant disavows those statements. In the instant case, the transcript of the plea hearing is strong evidence against and belies the Petitioner's contentions. Following our review of the record, we conclude that the Petitioner has failed to establish that the proof preponderates against the findings made by the post-conviction court that he received the effective assistance of counsel and that his plea was entered knowingly and voluntarily. *See State v. Mackey*, 553 S.W.2d 337, 340 (Tenn. 1977).

**CONCLUSION**

Based on the foregoing, we affirm the post-conviction court's denial of the Petitioner's post-conviction petition.

_____
JOHN EVERETT WILLIAMS, JUDGE